# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Criminal Action Number** |
| ) | **14-00224-01-CR-W-DW** |
| **Wansolo B. Hughley,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

On August 26, 2014, defendant Wansolo B. Hughley ("Hughley") was indicted and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Pending before the Court is Hughley's MOTION TO DISMISS INDICTMENT [Doc. 18]. In his motion, Hughley asserts that Section 922(g)(1) is unconstitutional as applied to him, impermissibly infringing on his Second Amendment right to keep and bear arms.

Section 922(g)(1) prohibits an individual previously convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. For purposes of his motion, Hughley essentially concedes that he has at least one prior felony conviction. Also for purposes of the motion, Hughley does not dispute that a law enforcement search of a vehicle associated with Hughley on July 26, 2014, found live ammunition, a 9mm handgun, and a .40 caliber handgun, leading to the present indictment for being a felon in possession of a firearm.

In 2008, the United States Supreme Court found that "that the Second Amendment conferred an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595, 128 S. Ct. 2783, 2799 (2008). In reaching this holding, however, the Court emphasized that "the right was not unlimited." *Id*. To that end, the Court noted:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, <u>nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons</u> and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 626-27, 128 S. Ct. at 2816-17 (*emphasis added*). Even acknowledging that the highlighted statement from the Court was *dicta*, the Eighth Circuit has observed:

> The analytical basis for the presumptive constitutionality of these regulatory measures was not thoroughly explained, but we know at least that "statutory prohibitions on the possession of weapons by <u>some persons</u> are proper," and "exclusions need not mirror limits that were on the books in 1791 [when the Second Amendment was ratified]."

*United States v. Bena*, 664 F.3d 1180, 1182 (8th Cir. 2011) (*quoting*, *in part*, *United States v. Skoien,* 614 F.3d 638, 640-41 (7th Cir. 2010) (*en banc*)) (*emphasis added*). At a minimum, the *dicta* in *Heller* and the reasoning of *Bena* seemingly foreclose any argument that Section 922(g)(1) is <u>facially</u> unconstitutional under the Second Amendment. *See*, *e.g.*, *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). In fact, the Eighth Circuit reached that conclusion in *United States v. Joos*, 638 F.3d 581 (8th Cir. 2011).

Notwithstanding the foregoing, Hughley argues that Section 922(g)(1) is unconstitutional under the Second Amendment <u>as applied</u> to him in this case. *Compare United States v. Siegrist*, 595 F. App'x 666, 667 (8th Cir. 2015) ("Our Circuit arguably has left open the possibility that certain defendants might be able to successfully bring such challenges to the felon-in-possession statute."). Hughley's primary argument against the constitutionality of Section 922(g)(1) is that it effects a <u>permanent</u> restriction on him that "categorically denies [his] fundamental right to keep and bear arms."

2

In making his argument, Hughley acknowledges that Congress, at one time, did intend to provide an avenue of relief to convicted felons when it enacted a statute providing:

> A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. . . .

18 U.S.C. § 925(c). The Supreme Court has described this statute as a "safety valve" permitting individuals to apply to the Attorney General for restoration of their firearms rights. *Logan v. United States*, 552 U.S. 23, 28 n.1, 128 S. Ct. 475, 480 n.1 (2007). However, "since 1992, 'Congress has repeatedly barred the Attorney General from using appropriated funds to investigate or act upon relief applications,' leaving the provision 'inoperative.'" *Schrader v. Holder*, 704 F.3d 980, 982 (D.C. Cir. 2013) (*quoting*. *In part*, *Logan*, 552 U.S. at 28 n.1, 128 S. Ct. at 480 n.1).

Notwithstanding the current infirmity of Section 925(c), Hughley also acknowledges that yet another Congressional enactment provides a convicted felon with an avenue of relief. Specifically, 18 U.S.C. § 921, in part, excludes from consideration under Section 922(g) "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(20)(B). Hughley asserts, however, that these "methods of restoration under Missouri law are not in any way tied to the relevant issue of whether the felon is actually a threat to public safety such that his Second Amendment rights may be curtailed."

3

Hughley's argument might be persuasive if the Court was applying strict scrutiny to Section 922(g). But, as noted,[1] the Court believes that intermediate scrutiny is the appropriate analytical construct. Applying that test, the Court finds that Section 922(g)(1) does not impermissibly run afoul of the Second Amendment. Like the Seventh Circuit, the Court finds that the government's stated objective – "to keep firearms out of the hands of violent felons, who the government believes are often those most likely to misuse firearms" – meets the requirement of demonstrating that the subject classification (felons with firearms) serves important governmental objectives. *United States v. Williams*, 616 F.3d 685, 692-93 (7th Cir. 2010).

With regard to the second component of intermediate scrutiny (the use of the classification is substantially related to the achievement of the government's objective), the *Williams* court found that the test was satisfied by the government's reference to the defendant's

---

[1] In asserting his constitutional argument, Hughley contends that the Court must analyze Section 922(g)(1) using the "strict scrutiny" inasmuch as the *Heller* court deemed the right to keep and bear arms to be a fundamental right. Such scrutiny would require the government to establish that Section 922(g)(1) is narrowly tailored to serve a compelling interest. *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 2231 (2015). By contrast, the government argues that since Adams is not among the class protected by the Second Amendment (as set out in the *Heller dicta*), the analysis of Section 922(g)(1) need only meet a "rational basis" test that the Supreme Court has already addressed. *Lewis v. United States*, 445 U.S. 55, 65-66, 100 S. Ct. 915, 921 (1980) ("Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm.). The Eighth Circuit has not addressed the issue regarding Section 922(g)(1) and the appropriate Second Amendment scrutiny. In reviewing other federal decisions, the Court finds the reasoning of the Ninth Circuit in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) (addressing a different sub-section of Section 922(g)), the most persuasive:

> [Section] 922(g)(9) does not implicate the <u>core</u> Second Amendment right, but it does place a <u>substantial burden</u> on the right. Accordingly, we conclude that intermediate rather than strict scrutiny is the proper standard to apply.

*Id*. at 1138 (*emphasis added*). With this test, the government "bears the burden of demonstrating that the [subject] classification serves important governmental objectives and that the use of [the] classification is substantially related to the achievement of that objective." *Lawson v. Kelly*, 58 F.Supp.3d 923, 934 (W.D. Mo. 2014).

"own violent past." Id. at 693. In this case, the government likewise satisfies its burden by noting Hughley's prior felony convictions, probation violations and illegal drug use.

As for Hughley's arguments regarding the permanence of the impact on his ability to keep and bear arms – even assuming that an avenue to restoration of such ability is fundamental to the constitutional analysis – the Court concludes that the law does provide a means for a felon like Hughley to obtain relief. The fact that such relief may be rare or difficult to achieve or, in some respects, presently foreclosed to Hughley because of his specific circumstances, does not create a case for declaring Section 922(g)(1) unconstitutional as applied to Hughley.

Finally, Hughley argues that a recently enacted amendment to the Missouri constitution impacts that analysis of his claims before the Court. The subject amendment, adopted in August 2014, provides:

> That the right of every citizen to keep and bear arms, ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power, shall not be questioned. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as a result of a mental disorder or mental infirmity.

MO. CONST. art. 1, § 23. The Court does not find that the amendment in and of itself has restored Hughley's civil rights nor that the amendment generally impacts the application of Section 922(g) to Hughley. As noted by the Supreme Court in rejecting an argument akin to the one advanced by Hughley in another context:

> Under [the proposed] all-or-nothing argument, federal law would forbid only a subset of activities already criminal under state law. This limitation would contradict the intent of Congress. In Congress' view, existing state laws "provide less than positive assurance that the person in question no

5

> longer poses an unacceptable risk of dangerousness." Congress meant to keep guns away from all offenders who, the Federal Government feared, might cause harm, even if those persons were not deemed dangerous by States. <u>If federal law is to provide the missing "positive assurance," it must reach primary conduct not covered by state law</u>.

*Caron v. United States*, 524 U.S. 308, 315, 118 S. Ct. 2007, 2012 (1998) (*quoting in part*, *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 120, 103 S. Ct. 986, 995, 996 (1983)) (*emphasis added*). *See also United States v. Niccum*, 2009 WL 1382941, op. at *1 (E.D. Mo. May 14, 2009) (a defendant's "right to possess a firearm under state law does not affect the ability of the federal government to restrict this right").

In accordance with the foregoing discussion, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Hughley's Motion to Dismiss Indictment [Doc. 18].

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                            */s/ John T. Maughmer*
                                               **John T. Maughmer**
                                      **United States Magistrate Judge**